# SUPREME COURT OF THE UNITED STATES

————

No. 23A366

————

## MELANIE GRIFFIN, SECRETARY OF THE FLORIDA DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION *v.* HM FLORIDA-ORL, LLC

ON APPLICATION FOR STAY

[November 16, 2023]

The application for stay presented to JUSTICE THOMAS and by him referred to the Court is denied.

JUSTICE THOMAS, JUSTICE ALITO, and JUSTICE GORSUCH would grant the application for stay.

Statement of JUSTICE KAVANAUGH, with whom JUSTICE BARRETT joins except as to footnote 1, respecting the denial of the application for stay.

Florida recently enacted a law that makes it a misdemeanor for a restaurant or bar to knowingly admit a child to an "adult live performance," defined as a sexually explicit show that would be obscene in light of the child's age. Fla. Stat. §827.11 (2023). An Orlando restaurant known as Hamburger Mary's sued the State (nominally, the relevant state official) and argued that the new Florida law violated the First Amendment. The District Court agreed that the law was likely unconstitutional, and the court preliminarily enjoined the State from enforcing the law against Hamburger Mary's or any other entity, including non-parties to this litigation. Florida has appealed the District Court's judgment to the Eleventh Circuit. That appeal is pending.

As relevant here, Florida seeks a partial stay of the District Court's judgment while the appeal is ongoing. The Eleventh Circuit denied the State's stay request, and

Florida now asks this Court for a stay pending appeal. For this Court to grant a stay pending appeal, a stay applicant must show, among other things, "a reasonable probability" that this Court would eventually grant certiorari on the question presented in the stay application if the district court's judgment were affirmed on appeal. *Merrill* v. *Milligan*, 595 U. S. \_\_\_, \_\_\_ (2022) (KAVANAUGH, J., concurring) (slip op., at 3); see *Hollingsworth* v. *Perry*, 558 U. S. 183, 190 (2010). The State has not made that showing here.

To begin with, although Florida strongly disagrees with the District Court's First Amendment analysis, Florida's stay application to this Court does not raise that First Amendment issue. Therefore, the Court's denial of the stay indicates nothing about our view on whether Florida's new law violates the First Amendment.

Rather, for purposes of its stay application, Florida challenges only the scope of relief ordered by the District Court—namely, that the injunction prohibits state enforcement of the law not only against Hamburger Mary's but also against other entities that are non-parties to this litigation. To be clear, if this Court, for example, were ultimately to affirm the District Court's First Amendment judgment on the merits, the State could not successfully enforce this law against anyone, party or not, in light of *stare decisis*. But district court judgments do not have that *stare decisis* effect. And the State here contends that the District Court otherwise lacked authority to enjoin the State from enforcing the law against entities other than Hamburger Mary's. Therefore, the State says that it should be able to enforce the law against those non-parties during the pendency of its appeal.

No federal statute expressly grants district courts the power to enter injunctions prohibiting government enforcement against non-parties in the circumstances presented in this case. The question of whether a district

court, after holding that a law violates the Constitution, may nonetheless enjoin the government from enforcing that law against non-parties to the litigation is an important question that could warrant our review in the future.[1] But the issue arises here in the context of a First Amendment overbreadth challenge, which presents its own doctrinal complexities about the scope of relief. This case is therefore an imperfect vehicle for considering the general question of whether a district court may enjoin a government from enforcing a law against non-parties to the litigation. For that reason, the Court is not likely to grant certiorari on that issue in this particular case.

In sum, because this Court is not likely to grant certiorari on the only issue presented in Florida's stay application, it is appropriate for the Court to deny the application.

––––––––––

[1] Importantly, that issue is distinct from the issue of a court's setting aside a federal agency's rule under the Administrative Procedure Act. The APA expressly authorizes a court to "hold unlawful and set aside agency action" that violates the Act. 5 U. S. C. §706(2); see M. Sohoni, The Power To Vacate a Rule, 88 Geo. Wash. L. Rev. 1121, 1173 (2020) ("The term 'set aside' means invalidation—and an invalid rule may not be applied to anyone" (footnote omitted)). As a leading article explained: "Judicial review of agency action presents a different situation because the Administrative Procedure Act instructs a reviewing court to 'hold unlawful and set aside' agency rules and orders that it deems unlawful or unconstitutional." J. Mitchell, The Writ-of-Erasure Fallacy, 104 Va. L. Rev. 933, 1012 (2018). Therefore, "[u]nlike judicial review of statutes, in which courts enter judgments and decrees only against litigants, the APA . . . go[es] further by empowering the judiciary to act directly against the challenged agency action. This statutory power to 'set aside' agency action is more than a mere non-enforcement remedy. . . . In these situations, the courts *do* hold the power to 'strike down' an agency's work, and the disapproved agency action is treated as though it had never happened." *Id.*, at 1012–1013 (footnote omitted). Of course, if a lower court sets aside an agency rule under the APA, the Federal Government may promptly seek a stay in the relevant court of appeals or in this Court if the Government wants the rule to remain in effect while the appellate litigation over the rule's legality is ongoing.